# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 19-04310-JW |
| | Chapter 13 |
| Evelyn Coats-Califf, | **ORDER ON MOTION TO** |
| Debtor(s). | **RECONSIDER** |

This matter comes before the Court upon the Motion to Reconsider Order Overruling Objection to Confirmation ("Motion to Reconsider") filed by Cathedral Baptist Church of the Grand Strand, Inc. ("Creditor") on November 20, 2019. Evelyn Coats-Califf ("Debtor") filed a response to the Motion to Reconsider and a hearing was held on the matter, attended by Reverend Reggie Miller, registered agent and President of the Board of Trustees for Creditor, Debtor and counsel for Debtor. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, which is made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014(c).[1]

## **FINDINGS OF FACT**

1. Debtor is the owner of certain real estate in Horry County, South Carolina, better known as 304 Waterside Drive in Myrtle Beach, South Carolina ("Principal Residence").

2. Debtor is also the owner of certain real estate in Marion County, South Carolina, better known as 307 Laughlin Drive, in Marion, South Carolina ("Marion Property").

3. On November 9, 2017, Debtor executed a confession of judgment in favor of Creditor for four unsecured loans totaling $48,200 between Creditor and Debtor from November 2016 to January 2017 ("Confession of Judgment"). The Confession of Judgement was filed in the

---

[1] To the extent the following findings of fact are conclusions of law, they are adopted as such, and vice versa.

1

public records of Horry County on February 23, 2018 and the public records of Marion County on March 1, 2018. Pursuant to S.C. Code Ann § 15-35-810, Creditor's Confession of Judgment is a judicial lien on both the Principal Residence and the Marion Property.

4. On August 14, 2019, Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code.

5. In her sworn schedules and statements, Debtor stated under oath that the value of the Principal Residence is $350,000 and the value of the Marion Property is $15,000. She also claims an exemption of $60,975 in the Principal Residence pursuant to South Carolina's principal residence exemption under S.C. Code Ann. § 15-41-30(A)(1)(a) and an exemption of $3,185 in the Marion Property pursuant to South Carolina's "Wild Card" exemption under S.C. Code Ann. § 15-41-30(a)(7). No objections were timely filed to these claimed exemptions.

6. Also on August 14, 2019, the Court issued a Notice of Chapter 13 Bankruptcy Case, which provided the following:

> The confirmation hearing will be held on:
>
> 11/13/19 at 10:00 AM, Location: King and Queen Building, 145 King Street, Room 225, Charleston, SC 29401. A copy of the chapter 13 plan to be considered at the hearing will be sent separately by the debtor. This hearing may be continued or rescheduled as necessary.
>
> The deadline for filing and serving any objection to the confirmation of the plan will be set forth in a separate notice which will accompany the plan. Any objection must be in writing and filed by the deadline. Objections may be overruled if late or if the objecting party fails to appear and prosecute the objection.

A certificate of service was filed indicating that Creditor was served with the Notice of Chapter 13 Bankruptcy Case at the address of P.O. Box 2160, Myrtle Beach, South Carolina 29578-2160.[2]

---

[2] The Court notes that this is the same address provided for both notices and payments included in the proof of claim filed by Creditor on November 19, 2019.

2

7. On August 22, 2019, Debtor filed a proposed chapter 13 plan. The proposed chapter 13 plan provided the following regarding Creditor's Confession of Judgment:

> The judicial liens . . . securing the claims listed below impair exemptions to which the debtor would have been entitled under 11 U.S.C. § 522(b). Unless otherwise ordered by the Court, a judicial lien or security interest listed below will be avoided to the extent that it impairs such exemptions upon entry of the order confirming the plan. The amount of the judicial lien or security interest that is avoided will be treated as an unsecured claim . . . to the extent allowed. The amount, if any, of the judicial lien or security interest that is not avoided will be paid in full as a secured claim under the plan. . . .

| Name of Creditor and description of property securing lien | Estimated amount of lien | Total of all senior/unavoidable liens | Applicable Exemption and Code Section | Value of debtor's interest in property | Amount of lien not avoided | Amount of lien avoided |
|---|---|---|---|---|---|---|
| Cathedral Baptist Church of the Grand<br><br>House and lot located at 304 Waterside Drive Myrtle Beach, SC 29577 | $48,200.00 | $343,890.18 | $60,975.00 S.C. Code Ann. § 15-41-30(A)(1)(a) | $350,000.00 | $0.00 | $48,200.00 |
| Cathedral Baptist Church of the Grand<br><br>House and lot located at 307 Laughlin Drive, Marion, SC 29571 | $48,200.00 | $0.00 | $3,185.00 S.C. Code Ann. § 15-41-30(A)(7) | $15,000.00 | $0.00 | $48,200.00 |

8. On September 9, 2019, Creditor timely filed a document with the Court entitled "Objection to Plan Presented 8/22/19." The document was treated and docketed as an objection to the confirmation of the proposed chapter 13 plan filed on August 22, 2019 ("Objection to Confirmation"). In the Objection to Confirmation, Creditor asserts, among other things, that Debtor cannot maintain the Principal Residence and that the Principal Residence could be sold for $500,000 which would pay off the Confession of Judgment, as well as alleging past misrepresentations and overvaluing of the Marion Property by Debtor.

3

9. On September 30, 2019, Reverse Mortgage Funding, LLC timely filed a proof of claim, indicating that it held a claim of $346,368.26 secured by a first mortgage on the Principal Residence.[3]

10. On November 7, 2019, Debtor filed and served a response to the Objection to Confirmation.

11. On November 13, 2019, the Court held the confirmation hearing of Debtor's proposed chapter 13 plan. No party appeared on behalf of Creditor at the confirmation hearing, and the Court overruled the Objection to Confirmation at the request of Debtor's counsel based upon Creditor's failure to prosecute its objection. At the November 13, 2019 confirmation hearing, the Trustee requested a CI Order, which was subsequently entered by the Court on November 13, 2019. The CI Order provided that "[t]he plan as presently filed will be confirmed if the trustee recommends confirmation."

12. After the expiration of the claims deadline, on November 19, 2019, Creditor filed a proof of claim, asserting a secured claim in the amount of $48,200 based on the Confession of Judgment.[4]

13. On November 20, 2019, Creditor filed the Motion to Reconsider, alleging that it "failed to understand that we [sic] needed to be at the hearing on Nov. 13 [and] [w]e [sic] do not have the funds for an attorney."

14. On December 10, 2019, Debtor filed a response to the Motion to Reconsider.

---

[3] The first mortgage held by Reverse Mortgage Funding, LLC was recorded in the public records of Horry County in 2013, and therefore, has priority over the judicial lien of the Confession of Judgment. Creditor did not dispute that Reverse Mortgage Funding, LLC has priority over its judicial lien.

[4] While no objections to Creditor's proof of claim have been filed, it would appear the proof of claim would be disallowed as untimely. Nonetheless, any lien of Creditor's not avoided by Debtor's proposed chapter 13 plan would pass through Debtor's bankruptcy case.

4

15.     Reserving the determination as to whether Creditor, an incorporated entity, may proceed *pro se* in this matter, the Court held a hearing on the Motion to Reconsider, attended by Debtor, Debtor's counsel and Reverend Reggie Miller, the registered agent and President of the Board of Trustees for Creditor. At the hearing, both sides presented various documents and requested their admission into evidence to which the opposing party objected. Creditor presented Horry County tax records for the Principal Residence and neighboring properties (owned by others), a 2016 insurance valuation report of the Principal Residence, numerous documents related to repairs to the Principal Residence as well as letters Creditor wrote on the matter. Debtor objected to the admission of these documents into evidence. Relating to the credibility of the matters and statements made by Creditor to the Court, Debtor presented a 2015 criminal judgment entered against Reverend Reggie Miller, in which he pled guilty to several counts, including fraud and willful failure to pay minimum wage and was sentenced to 1 year of home confinement and ordered to pay $75,000 in restitution. Creditor objected to the admission of this criminal judgment.[5] The Court took the evidentiary objections under advisement.

## **CONCLUSIONS OF LAW**

Creditor asserts that it was not aware that it was necessary for its representative to attend the November 13, 2019 confirmation hearing, and therefore seeks relief from the Court's Order overruling its Objection to Confirmation. Debtor contests Creditor's Motion to Reconsider on multiple grounds. First, Debtor asserts that the motion should be denied because Creditor, an incorporated entity, is proceeding *pro se* in violation of the Court's local rules. Second, Debtor

---

[5] The Court did not consider the criminal judgement against Reverend Reggie Miller as it was not necessary in reaching the determination of this matter.

5

asserts Creditor has not satisfied its burden of demonstrating that it should be relieved from the Court's Order overruling its Objection to Confirmation.

### *Failure to be Represented by Counsel*

Creditor is an incorporated entity registered with the South Carolina Secretary of State. It filed its proof of claim, the Motion to Reconsider and its Objection to Confirmation in its capacity as a corporation. The representative of Creditor that filed the pleadings, including the objection to confirmation and the Motion to Reconsider, Reverend Reggie Miller, the registered agent and President of the Board of Trustees for creditor, is not a licensed attorney and not admitted to appear before this Court.

This District's Local Bankruptcy Rule 9011-2 provides that "[i]n any petition for relief, motion, adversary proceeding, or other document, or objections or responses thereto . . . [a]ll partnerships, corporations and other business entities must be represented by an attorney duly admitted to practice as specified in SC LBR 2090-1, except with respect to the filing of proofs of claims or interests and related documents and reaffirmation agreements or unless allowed by the Court."

This local rule is not unique to this Court as similar rules are common for federal courts.[6] *See, e.g.,* Local Civil Rule 83.I.07 (D.S.C.) ("If the withdrawal will leave the party unrepresented,

---

[6] There are several reasons for such rules requiring representation:

> [S]ound reasons exist for this rule. The interests of a corporation and its principal frequently overlap but are not identical in all respects. Thus, requiring separate counsel for a corporation works as an independent safeguard of its interests. Moreover, . . . reasons for requiring a corporate litigant to have legal representation include principally that the conduct of litigation by a nonlawyer creates unusual burdens not only for the party he represents but as well for his adversaries and the court. The lay litigant frequently brings pleadings that are awkwardly drafted, motions that are inarticulately presented, proceedings that are needlessly multiplicative. In addition to lacking the professional skills of a lawyer, the lay litigant lacks many of the attorney's ethical responsibilities .
> . . .

the motion shall[,] . . . [i]f the party is a corporation, partnership, association, other legal entity or any person proceeding in a representative capacity, state that the party has been informed that (a) it may not proceed without counsel, (b) its counsel must be admitted in this district, and (c) it may be held in default or have its claims dismissed if it fails to obtain replacement counsel within a reasonable time."); Local Bankruptcy Rule 2090-1 (Bankr. W.D.N.C.) ("All partnerships, corporation, limited liability companies, trusts, association and other business entities that appear in cases or proceedings before this Court . . . must be represented by a lawyer duly admitted to practice before this Court."). The Supreme Court of the United States has noted that "[i]t has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Counsel*, 506 U.S. 194, 201–02 (1993).

In the present matter, Creditor is proceeding without representation by counsel. The Court has not expressly allowed Creditor to appear *pro se*, and Creditor has not demonstrated sufficient grounds to permit it to proceed *pro se*.[7] For these reasons, Creditor lacks the ability to prosecute its Objection to Confirmation and its Motion to Reconsider; therefore, the relief sought by Creditor in the Motion to Reconsider is denied.

### *Motion to Reconsider*

As an additional ground for denial of the Motion for Reconsideration, Debtor asserts Creditor has not met the requirements to permit a reconsideration of the Court's prior order.

---

*Days Inn Worldwide, Inc. v. JBS, Inc.*, C/A No. 4:08-CV-1771-TLW-TER, slip op., 2010 WL 625391 at*2–3 (D.S.C. Feb. 19, 2010) (quoting *Batac Dev. Corp. v. B&R Consultants, Inc.*, C/A No. 98 Civ. 721 (CSH), slip op., 2000 WL 307400 at *2 (S.D.N.Y. Mar. 23, 2000) (internal quotations omitted)).

[7] The only indication provided to the Court for the failure to be represented by counsel was Reverend Miller's statements that Creditor has very little money and cannot afford an attorney. Beyond these statements, no evidence was presented of Creditor's financial status. Further, Reverend Miller indicated that Creditor received legal assistance when obtaining the Confession of Judgment against Debtor. Considering the amount of its claim, it does not appear Creditor thoroughly attempted to obtain representation.

7

The Federal Rules of Civil Procedure do not expressly provide for a motion to reconsider and such motions are generally considered as a motion for relief under Fed. R. Civ. P. 59(e) or Fed. R. Civ. P. 60(b). Creditor does not indicate whether the Motion to Reconsider is brought pursuant to Fed. R. Civ. P. 59(e) or 60(b).

Based on the timing of the filing of the Motion to Reconsider, the Court considers Creditor's motion under Fed. R. Civ. P. 59(e).[8] *See Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 470 n.4 (4th Cir. 2011) (construing a motion to reconsider as a Rule 59(e) motion when it was filed less than 10 days after the entry of the judgment); *In re Lee*, C/A No. 10-07833-jw, slip op. at 2 (Bankr. D.S.C. April 22, 2011) ("Because Debtor filed the Motion within 14 days of the entry of the judgment in accordance with Rule 59(e) and Fed. R. Bankr. P. 9023, the Court will construe the motion as a motion arising under Rule 59(e).").[9]

Relief under Rule 59(e) is "an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). The Fourth Circuit has stated "that Rule 59(e) motions can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) (internal quotations omitted). It does not appear Creditor is asserting an intervening change in controlling law, new evidence not available at trial or a correction of a clear error of law. Therefore, it appears Creditor's Motion to Reconsider is based on an alleged prevention of manifest injustice.

---

[8] Creditor filed the Motion to Reconsider seven days after the November 13, 2019 confirmation hearing. While Debtor framed her arguments for denial of the Motion to Reconsider under Fed. R. Civ. P. 60(b), many of the arguments remain applicable to Rule 59(e) determinations.

[9] In fact, the Fourth Circuit has indicated that a motion to reconsider that is filed under both Rule 59(e) and Rule 60(b) should be determined exclusively under Rule 59(e) if filed less than 10 days after the adverse judgment and seeks to correct that order. *Robinson v. Wix Filtration Corp., LLC*, 599 F.3d 403, 412 (4th Cir. 2010).

"To establish manifest injustice, [the Movant] must show that it acted with diligence and that it stands to suffer injury that is 'direct, obvious, and observable,' rather than mere potential prejudice." *Hartford Cas. Ins. Co. v. Farley Assocs. Inc.*, C/A No. 0:13-547-CMC, 2014 WL 4219953, slip op. at *5 (D.S.C. Aug. 25, 2014) (citing *Ciralsky v. CIA*, 355 F.3d 661 (D.C. Cir.2001); *Register v. Cameron and Barkley Co.*, 481 F.Supp.2d 479, 480 (D.S.C. 2007)). It is a high standard to obtain relief pursuant to a clear error of law or to prevent a manifest injustice under Rule 59(e). As stated by the Fourth Circuit, "[a] prior decision does not qualify [as a clear error of law or prevention of manifest injustice] by being just maybe or probably wrong, it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (citations omitted).

*Insufficient Justification for Failure to Appear*

In the present matter, the Court first notes that Creditor has not provided an adequate justification for its failure to have a representative at the November 13, 2019 confirmation hearing. Creditor indicated that it was not aware it was necessary to attend the November 13, 2019 confirmation hearing, citing to the fact that it has not retained a lawyer and its representatives are not familiar with legal procedures. While Creditor has decided to proceed without representation and act *pro se* in this bankruptcy case, it must still abide by the deadlines and attend hearings to prosecute its motions/objections and be subject to the same consequences as counsel. *See McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) ("[*Pro se*] litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines."); *Parks v. Huff*, 955 F.2d 42 (Table), 1992 WL 21363 (4th Cir. 1992)

9

Case 19-04310-eg    Doc 28    Filed 01/08/20    Entered 01/08/20 10:44:12    Desc Main
Document      Page 10 of 16

(upholding a lower court's decision to dismiss a *pro se* plaintiff's case for failure to prosecute after he failed to attend a scheduled trial). Creditor, by proceeding *pro se*, accepts the responsibilities and consequences of that decision, including having the relief it seeks denied for failure to prosecute its Objection to Confirmation when it failed to attend the hearing due to a mistaken belief.

In the present matter, the Notice of Bankruptcy Case served on Creditor indicated the time and place of the November 13, 2019 confirmation hearing and <u>specifically stated</u> that the failure to appear and prosecute any objection may result in the objection being overruled. Creditor does not dispute receiving this notice, and it appears its representative reviewed such notice as Debtor indicated that he appeared at 11 U.S.C. § 341 Meeting of Creditors.[10][11] Considering that the failure to attend the confirmation hearing was the result of Creditor's own conduct without sufficient justification, the Court finds that Creditor has not demonstrated that a manifest injustice would occur if the Court's denies Creditor's Motion to Reconsider.

*Unfair Prejudice to Debtor and Other Creditors*

Further, it appears permitting reconsideration of the Court's prior order would unfairly prejudice Debtor. Both Debtor and her counsel were prepared for and attended the November 13, 2019 confirmation hearing. Vacating the Court's prior order would require an additional hearing,

---

[10] While not directly on point with this matter, the Court also finds helpful the Fourth Circuit's analysis of excusable neglect under Fed. R. Civ. P. 60(b)(1) when a party is seeking to be relieved from a default judgment. The Fourth Circuit notes that there are "two analytical approaches under Rule 60(b) in cases of default: (1) those that involve a blame*less* party and a blame*worthy* attorney, and (2) those that involve a blame*worthy* party." Heyman v. M.L. Mktg. Co., 116 F.3d 91, 94 (4th Cir. 1997) (emphasis in original). "'When the party is at fault, the [court's interest in finality and efficiency dominate[s] and the party must adequately defend its conduct in order to show excusable neglect.'" *Id.* (quoting *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988)) (alteration in original). "[A] party seeking relief from a default judgment under Rule 60(b)(1) must show not only that he has a meritorious defense, but also 'that he had an acceptable excuse for lapsing into default . . . .'" *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987) (quoting *Central Operating Co. v. Utility Workers of Am., AFL-CIO*, 491 F.2d 245, 252 (4th Cir. 1974)).

[11] Further references to the Bankruptcy Code (11 U.S.C. § 101, et al.) shall be by section number only.

incurring further costs for Debtor, including travel expenses and attorney's fees. A lesser sanction in this matter for Creditor's failure to prosecute its objection at the November 13, 2019, such as awarding Debtor the attorney's fees and costs incurred for the preparation and attendance of the November 13, 2019 confirmation hearing, would be meaningless as Creditor's representative has indicated that Creditor does not have the financial means to hire an attorney, let alone pay the attorney's fees for Debtor due to its failure to prosecute its objection. To grant the Motion to Reconsider would, in essence, give Creditor a second bite at the apple as a result of its own failure to attend, causing unnecessary delay to the detriment of Debtor. Therefore, denial of the Motion to Reconsider is appropriate in this matter for Creditor's failure to prosecute its objection.

### *Consideration of Lien Avoidance*[12]

Section 522(f)(1) of the Bankruptcy Code provides that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . . if such lien is—a judicial lien . . . . Section 522(f)(2)(A) provides how the Court must determine if an exemption is impaired by a judicial lien:

> For the purposes of this section, a lien shall be considered to impair an exemption to the extent that the sum of—
>
> (i)   The lien;
> (ii)  All other liens on the property;
> (iii) The amount of the exemption that the debtor could claim if there were no liens on the property;
>
> Exceeds the value that the debtor's interest in the property would have in the absence of any liens.

While Creditor's Objection to Confirmation is denied, the Court nevertheless reviews plans for compliance with the Bankruptcy Code.

---

[12] At the hearing on the Motion to Reconsider, in an effort to expedite the determination of this matter, the Court permitted the parties to propose evidence pertaining to Creditor's Objection to Confirmation.

11

*The Principal Residence*

As to the judicial lien on the Principal Residence, the central dispute was the value of that property, with Creditor asserting the value of the property is greater than that asserted by Debtor in her schedules, statements and plan of $350,000. Accordingly, if the property's value is considerably higher as alleged by Creditor, Creditor's lien may only impair Debtor's exemption partially, if at all. However, Creditor has not demonstrated its alleged higher value for the Principal Residence.

The evidence proposed by Creditor in support of its asserted value is not admissible. First, the Court sustains Debtor's objection to the admission of the 2016 insurance valuation report created by RYZE Claim Solutions ("Insurance Report"), which provides an estimated cost to replace Debtor's residence. This Insurance Report has not been properly authenticated through testimony or the requirements of the Federal Rules of Evidence. Second, the Court sustains Debtor's objection to the admission of the Horry County Tax Records for the Principal Residence and neighboring properties (owned by others). The records submitted are website print outs and are not certified copies of public records. No party's testimony was offered regarding the authenticity of the records, and they do not qualify as self-authenticating under Fed. R. Evid. 902.

Second, even if admissible, the proposed evidence provides little probative value to support Creditor's position. First, the tax records of the neighboring properties owned by others is insufficient as this evidence lacks corresponding testimony to explain how the values of these properties relate to or differ with the value of the Principal Residence.[13] Further, while the

---

[13] It is apparent that there are significant differences between Debtor's Principal Residence and the neighboring properties, which would affect the value of the properties. For example, the neighboring properties (built between 2006 and 2017) are considerably newer than Debtor's Principal Residence (built in 1994). Further, the neighboring properties are considerably larger (ranging between 3362 and 4773 sq. ft.) than Debtor's Principal residence (2585 sq. ft.). Without further evidence and explanation, the Court is not in a position to weigh the comparable values between these properties.

inadmissible Horry County Tax Records for the Principal Residence provide some indication of value of the property, the document presented is incomplete, and no supporting testimony was provided as to how Horry County calculated the tax value for the Principal Residence, when the property was last assessed (and whether the property has appreciated or depreciated since that time), and whether the assessed value factors in the current condition of the property. As a result, in this matter, the Court does not find the assessed value of the Principal Residence to be convincing.  Second, the Insurance Report is out of date (the report was drafted on December 1, 2016), very brief in length, lacks explanation as to amounts and assumptions that it relies upon, and expressly indicates that it "is to be used for insurance purposes only and is provided on the condition and understanding that it represents only an estimate . . . ." No testimony was offered from the drafter of the Insurance Report, including whether the drafter physically inspected the property or used public information about the property to calculate its estimate. Further, the value relied upon by Creditor in the Insurance Report of $280,625.17 reflects a brand-new, rebuilt residence and does not reflect the property's current condition.

Creditor also presented for admission into evidence a number of insurance documents and repair estimates, and invoices for repairs made to the Principal Residence as a result of damage incurred during Hurricane Matthew. The documents were not admissible under the Rules of Evidence, but even considering them, the Court finds that they are not convincing regarding the value of the Principal Residence. Finally, Creditor did not present the testimony of any appraiser or other professional regarding the value of the property, and the Court finds any layman testimony offered would not be probative or assist the Court.[14]

---

[14]     The Court typically permits debtor's layman opinion of value as to the debtor's own property. *See Christopher Phelps & Associates, LLC v. Galloway*, 492 F.3d 532, 542 (4th Cir. 2007) ("Courts indulge a common-law presumption that a property owner is competent to testify on the value of his own property."). However, to the extent that Creditor intended for the unsworn statements of Reverend Reggie Miller to be considered evidence of an

13

Therefore, based on the record, the only admissible evidence of the value of the Principal Residence is Debtor's opinion indicated by her sworn schedules, indicating Debtor's assertion that the Principal Residence is valued at $350,000. Accordingly, based on the evidence presented, the Court finds the value of the Principal Residence is $350,000.

*The Marion Property*

At the hearing, neither party raised any issues regarding the avoidance of the judicial lien as to the Marion Property. Specifically, Creditor did not contest the $15,000 value asserted by Debtor and, in fact, agreed with Debtor that the Marion Property has fallen into disrepair, suggesting that "it has little value, [and] maybe someone will pay $10,000 for it as a lot." Further, Creditor did not object to Debtor's claim of the "wild card" exemption in the amount of $3,185. Therefore, as no allegations have been asserted by Creditor contesting the avoidance of the judicial lien as to the Marion Property, it would appear that the avoidance of that judicial lien is not in dispute.

Nonetheless, pursuant to the United States Supreme Court's directive in *United Student Aid Funds, Inc., v. Espinosa*, 559 U.S. 260, 276–77 (2010), bankruptcy courts have the "obligation" under § 1325(a) to direct debtors to conform their proposed chapter 13 plans to comply with the applicable provisions of the Bankruptcy Code. Applicable to this matter, section 522(f)(1) provides that "the debtor may avoid the fixing of a [judicial] lien on an interest of the debtor in property <u>to the extent that</u> such lien impairs an exemption to which the debtor would have been entitled under [this section of the Bankruptcy Code]." (emphasis added). "The majority of Courts that have interpreted [§ 522(f)] have found that a partial, rather than full, avoidance of a

---

opinion of value of the Principal Residence, the Court places little probative value and credibility in the testimony of a non-owner's layman testimony regarding the value of property, and such opinions are generally not admissible under Fed. R. Evid. P. 701.

14

judicial lien is dictated when the arithmetic test of § 522(f) yields a partial impairment." *See In re Porter*, C/A No. 98-10986-W, slip op. 1999 WL 334386084 (Bankr. D.S.C. May 25, 1999)); *In re Ware*, 274 B.R. 206, 209 (Bankr. D.S.C. 2001) (finding a judicial lien partially impaired an exemption, resulting in the judicial lien remaining in a reduced amount).

In the present matter, the Court finds Debtor's proposed chapter 13 plan incorrectly provides for the avoidance of Creditor's entire judicial lien encumbering the Marion Property. Debtor, in her proposed chapter 13 plan, asserts that the value of her interest in the Marion Property is $15,000 with no liens other than Creditor's $48,200 judicial lien. Debtor's schedules assert an exemption in the Marion Property of $3,185. Utilizing Debtor's asserted value and exemptions. Based on the arithmetic test of § 522(f), Debtor's exemption and the judicial lien equal $51,385, which exceeds the $15,000 value of Marion Property by $36,385. Therefore, pursuant to § 522(f), Debtor may only partially avoid Creditor's judicial lien up to the impairment in the amount of $36,385, with $11,815 of the judicial lien remaining as a lien on the Marion Property.[15]

As presently proposed, Debtor's plan does not provide for proper avoidance of Creditor's judicial lien encumbering the Marion Property pursuant to § 522(f). For these reasons, pursuant to the instructions of *Espinosa*, the Court cannot confirm the plan as presently proposed and directs Debtor to file an amended plan within ten days from the entry of this Order to revise the portion of the plan regarding the lien avoidance as to the Marion Property and to provide that Creditor retains a partially unavoidable lien in the amount of $11,815 secured by the Marion Property or otherwise provide treatment that complies with § 1325(a)(5). Upon service of Debtor's amended chapter 13 plan, Creditor may, <u>if represented by counsel</u>, file a response to the amended chapter

---

[15] The Court reaches the $11,815 amount by subtracting the amount of the lien avoided from the total amount of the judicial lien ($48,200-$36,385=$11,815).

13 plan as to the treatment of its judicial lien encumbering the Marion Property. Failure to file an amended plan within ten days from the entry of this Order may result in the Court denying confirmation of the chapter 13 plan and dismissing Debtor's bankruptcy case.

### CONCLUSION

For the foregoing reasons, Creditor's Motion to Reconsider is denied.[16] Due to the noncompliance of Debtor's proposed plan as to the lien avoidance involving the Marion Property, Debtor is directed to file an amended chapter 13 plan which conforms with the Court's findings regarding the lien avoidance on that property, and Creditor, if represented by counsel, may file a limited response to the amended plan to address Debtor's treatment of its judicial lien encumbering the Marion Property.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
January 8, 2020

**FILED BY THE COURT**
**01/08/2020**



Entered: 01/08/2020

*/s/ John E. Waites*

US Bankruptcy Judge
District of South Carolina

---

[16] While the Court finds that Fed. R. Civ. P. 59 applies to this matter, to the extent that Fed. R. Civ. P. 60 applies, the Court denies the Motion to Reconsider pursuant to Fed. R. Civ. P. 60 for the same reasons stated herein.

16